2005-NMCA-096

116 P.3d 854

Robert E. VIGIL, Petitioner–Appellant,

v.

STATE AUDITOR'S OFFICE of the State of New Mexico and Domingo P. Martinez, State Auditor, in his official and individual capacities, and the Accounting Firm of Dennis R. Kennedy, P.C., and Dennis R. Kennedy, C.P.A., president and owner of Dennis R. Kennedy, P.C., Respondents–Appellees.

No. 24,225.

Court of Appeals of New Mexico.

June 1, 2005.

Certiorari Denied, No. 29,314, July 21, 2005.

Dave Romero, Jr., Romero Law Firm, P.A., Las Vegas, NM, for Appellant.

Sean Olivas, Keleher & McLeod, P.A., Albuquerque, NM, for Appellees State Auditor's Office of the State of New Mexico and Domingo P. Martinez.

David N. Hernandez, Albuquerque, NM, for Appellees Dennis R. Kennedy, P.C. and Dennis R. Kennedy, C.P.A.

*OPINION*

FRY, Judge.

{1} This case involves a dispute between two state auditors, Plaintiff Robert E. Vigil and Defendant Domingo P. Martinez. After Vigil left office as state auditor, Martinez took over and had an independent audit performed on Vigil's work at the agency by Defendant Dennis R. Kennedy, C.P.A., and his Albuquerque accounting firm, Dennis R. Kennedy, P.C. The report issued by Kennedy made several findings that were unfavorable to Vigil, and Vigil subsequently filed a complaint against Defendants Martinez, Kennedy, and the Office of the State Auditor (OSA), for defamation, prima facie tort, negligence, and intentional infliction of emotional distress. The district court dismissed Vigil's complaint, and Vigil now appeals, raising issues relating only to his claims for defamation and negligence. Unpersuaded by Vigil's arguments, we affirm.

## BACKGROUND

{2} Vigil's complaint, which he filed pro se, contains the following factual allegations. Vigil is a former state auditor, who was subsequently replaced in that office by Martinez. In his capacity as state auditor, Martinez commissioned a special audit of Vigil's activities as state auditor. The special audit was performed by Kennedy and his accounting firm (collectively referred to in this opinion as "Kennedy"). Vigil alleged that the audit report implied that during his tenure as state auditor, Vigil committed or permitted numerous violations of New Mexico state law. Television broadcasts aired the story, and a newspaper article in the Albuquerque Journal reported that the New Mexico State Police had conducted an investigation into the report and had found "every indication that [a] strong pattern of public corruption existed."

{3} The district court dismissed Vigil's claims against all defendants in two separate orders, determining that Kennedy had no legal duty to Vigil, that Vigil's claims against

the OSA and Martinez were barred by the statute of limitations, that the actions of Martinez and the OSA were within the scope of their governmental duties, and that no waiver of immunity existed for the alleged acts.

## DISCUSSION

{4} "We review a ruling on a grant of a motion to dismiss de novo, accepting all well-pleaded factual allegations as true and resolving all doubts in favor of the sufficiency of the complaint." *Stoneking v. Bank of Am., N.A.,* 2002–NMCA–042, ¶ 4, 132 N.M. 79, 43 P.3d 1089. Dismissal is proper only when the law does not support a claim under the facts presented. *Id.*

### Preliminary Matters

{5} On appeal, Vigil has abandoned certain of the claims asserted below. Vigil's complaint brought claims for defamation against the OSA and Martinez under the Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -29 (1976, as amended through 2004), for defamation and prima facie tort against Martinez personally, and for negligence against Kennedy. Although the caption of the complaint lists a claim for intentional infliction of emotional distress, no allegations supporting this tort are stated in the complaint itself or were argued below. *See Hakkila v. Hakkila,* 112 N.M. 172, 182, 812 P.2d 1320, 1330 (Ct.App.1991) (Donnelly, J., specially concurring) (stating the following elements must be alleged to state a claim of intentional infliction of emotional distress: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress"). Similarly, no allegations supporting a claim of prima facie tort were made in the complaint or argued below. *See Schmitz v. Smentowski,* 109 N.M. 386, 394, 785 P.2d 726, 734 (1990) (stating that a claim for prima facie tort requires (1) "[a]n intentional, lawful act by defendant"; (2) "[a]n intent to injure the plaintiff"; (3) "[i]njury to plaintiff"; and (4) "insufficient justification for the defendant's acts" (citation omitted)). Vigil raises

no issues on appeal arising from these two claims.

{6} Vigil also makes several arguments that we decline to address because they were not preserved. Vigil raises issues concerning Martinez's alleged breaches of statutes and regulations; because these issues were not alleged in the complaint and were not raised below, we will not address them separately. *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). We will consider Martinez's alleged breaches of statutes and regulations only to the extent that they suggest Martinez was not acting within his scope of duty when commissioning the special audit and publishing the report.

{7} In addition, Vigil now argues that he stated a claim for defamation against Kennedy. Although Vigil clearly alleged defamation claims in his complaint against the OSA and Martinez, as against Kennedy, Vigil alleged only that Kennedy owed Vigil a duty to ensure that the special audit was performed according to the standards of a reasonably prudent accounting firm undertaking an audit of a government agency. Moreover, in his response to Kennedy's motion to dismiss on the ground that Kennedy owed no duty of care to Vigil, Vigil asserted that his claim was "a common-law claim for damages to Plaintiff's reputation based on the negligence" of Kennedy's conduct in preparing the special audit report. In our view, the district court's attention was not alerted to a claim of defamation against Kennedy and, accordingly, it was not preserved for appeal. *Id.* Vigil appears to argue, however, that this is an issue of great public importance, apparently arguing that we should ignore preservation requirements and review the issue. *See Andrews v. Saylor,* 2003–NMCA–132, ¶ 25, 134 N.M. 545, 80 P.3d 482 (reviewing unpreserved error when issue raised is of general public interest). Because we are not persuaded that Vigil's allegations that he was personally defamed are of a general public nature affecting the interest of the State, we

will not consider this unpreserved issue. *See State v. Pacheco,* 85 N.M. 778, 779, 517 P.2d 1304, 1305 (Ct.App.1973) (noting an exception to the preservation requirement for "questions of a general public nature affecting the interest of the [S]tate at large" (internal quotation marks and citation omitted)).

{8} We also note that Plaintiff's lawsuit names Martinez in his official and individual capacities. Because this lawsuit was not a civil rights action brought pursuant to 42 U.S.C. § 1983, those descriptions are inappropriate in this case, which alleged tort claims against the State and Martinez under the TCA, against Kennedy as a private citizen, and against Martinez as a private citizen not acting within his scope of duty. *See Ford v. N.M. Dep't of Pub. Safety,* 119 N.M. 405, 410–11, 891 P.2d 546, 551–52 (Ct.App. 1994) (discussing the differences in procedure and remedies between TCA claims and civil rights claims). We first address the claims against the OSA and Martinez and then discuss the claims against Kennedy.

*Tort Claims Against the OSA and Martinez*

{9} Vigil argues that his claims against Martinez and the OSA should not have been dismissed. Specifically, he argues that these Defendants were not immune from his defamation claims under the TCA because they were not acting within the scope of their duties. Addressing the district court's alternative ground for dismissal, Vigil also argues that his claim was not time-barred.

{10} The TCA "delimits the scope of liability for government entities and their employees by: (1) retaining immunity for torts not waived by the TCA; and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty." *Celaya v. Hall,* 2004–NMSC–005, ¶ 8, 135 N.M. 115, 85 P.3d 239 (citations omitted). Section 41–4–17(A) of the TCA provides

> the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be

brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

The actions for which immunity is waived are set out in Sections 41–4–5 to –12 of the TCA and the Religious Freedom Restoration Act, NMSA 1978, § 28–22–4 (2000).

{11} In this case, Vigil does not argue that immunity is waived for his defamation claims under the express waiver provisions in Sections 41–4–5 to –12 or under Section 28–22–4. *See Candelaria v. Robinson,* 93 N.M. 786, 790, 606 P.2d 196, 200 (Ct.App.1980) (stating that unless a plaintiff alleges defamation by a law enforcement officer, immunity is not waived under the TCA). Instead, Vigil contends that because Martinez was acting outside his scope of duty, the TCA does not apply and Martinez is not immune.

{12} As the State argued to the district court, such an argument misconstrues the statutory scheme of the TCA. Under Section 41–4–4(D), the State is only liable for its employees' negligence when those employees are acting in their scope of duty. Thus, the State's liability is similar to that of a private employer under the doctrine of respondeat superior. *See Medina v. Fuller,* 1999–NMCA–011, ¶ 12, 126 N.M. 460, 971 P.2d 851. Consequently, if Martinez was not acting within his scope of duty when he authorized the independent audit and published its results, Vigil's recourse is against Martinez personally, but the State would not be obliged to pay any settlement or judgment that might result. *See* § 41–4–4(D). If we determine, however, that Martinez was acting within his scope of duty, because no specific waiver of immunity existed for that conduct, then the district court correctly dismissed the action against both the OSA and Martinez.

*Scope of Duty*

{13} Vigil asserts that Martinez was not acting within his scope of duty because (1) Martinez's decision to audit his predecessor violated statutory and regulatory procedures for audits; and (2) Martinez permitted a false report to be published and he was not

"requested, required or authorized" to publish false reports. We are not persuaded. As our Supreme Court observed in *Celaya,* 2004–NMSC–005, ¶ 22, 135 N.M. 115, 85 P.3d 239, "scope of duties" is defined in Section 41–4–3(G), as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." The Court clarified that scope of duty is not limited to acts "officially requested, required or authorized because, contrary to legislative intent, it would render all unlawful acts, which are always unauthorized, beyond the remedial scope of the TCA." *Celaya,* 2004–NMSC–005, ¶ 25, 135 N.M. 115, 85 P.3d 239 (citing *Risk Mgmt. Div. v. McBrayer,* 2000–NMCA–104, ¶ 20, 129 N.M. 778, 14 P.3d 43). "Thus," the Court explained, "the TCA clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." *Id.*

{14} Under *Celaya* and *McBrayer,* assuming that Martinez violated state and federal law in conducting the audit, "even to the extent of some tortious or criminal activity," if he was performing an act that he was "requested, required or authorized to perform," he was acting within his scope of duty and thus covered by the statutory grant of immunity provided by the TCA. *See Celaya,* 2004–NMSC–005, ¶¶ 25, 26, 135 N.M. 115, 85 P.3d 239. The Audit Act, NMSA 1978, §§ 12–6–1 to –14 (1969, as amended through 2003), establishes the requirements for audits of state agencies. Under Section 12–6–3, Martinez, as the state auditor, was authorized either to perform, or to designate independent auditors approved by him to perform, annual and special audits of state agencies. In addition, under Section 12–6–5, Martinez was required to produce, or have the independent auditor produce, a written report of any audit performed, which would subsequently become part of the public record. Thus, Martinez was acting within his scope of duty when he designated an independent auditor to perform a special audit and when he published the report.

{15} Because Martinez was acting within his scope of duty in commissioning the special audit and publishing the report, and because no waiver of immunity exists under the TCA for claims of defamation, we affirm the district court's dismissal of Vigil's claims against the OSA and Martinez. In light of this disposition, we need not address Vigil's claim challenging dismissal pursuant to the statute of limitations.

### Claims Against Kennedy

{16} Vigil argues that he stated claims for both negligence and defamation against Kennedy. As we discussed earlier, the issue of defamation as to Kennedy was not preserved. Therefore, the issue before us is whether, under a theory of negligence, a certified public accountant owes a duty to a third party who is the subject of an audit. Whether a person owes a duty is a question of policy determined by the courts when the legislature has not spoken. *Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995). New Mexico courts have not specifically addressed the scope of an auditor's liability for a negligent audit. Analogizing to *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.,* 106 N.M. 757, 750 P.2d 118 (1988), however, Kennedy argued successfully to the district court that no such duty exists in New Mexico. Although *Garcia* focused on whether an attorney owed a duty to a non-client adverse party in the context of litigation, *Id.* at 760–61, 750 P.2d at 121–22, both *Garcia* and a later case, *Leyba v. Whitley,* 120 N.M. 768, 907 P.2d 172 (1995), offer us some direction when considering the scope of a duty to third parties.

{17} In *Garcia,* our Supreme Court determined that "[a]n attorney has no duty ... to protect the interests of a non-client adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client." 106 N.M. at 761, 750 P.2d at 122. In *Leyba,* the Court clarified when an attorney would have a duty to a non-client, stating that

[i]n considering relationships giving rise to duty, it seems logical to treat an intended (not incidental) third-party beneficiary as though in privity of contract and accord such a beneficiary traditional remedies in

the enforcement of promises and common-law duties in his or her own right and not simply in the enforcement of the promisee's right. 120 N.M. at 773, 907 P.2d at 177. The Court noted in *Leyba* that "[i]t is not, of course, the foreseeability of injury that gives rise to duty. It is the intent of attorney and client to benefit the third party that gives rise to a duty imposed by law." *Id.* at n. 2.

{18} With *Garcia* and *Leyba* in mind, we consider Kennedy's reliance on *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), and *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992) (In Bank), to argue that accountants should not be liable to third parties like Vigil who are subjects of an audit. In *Bily*, the Supreme Court of California described the three schools of thought on the issue of auditor liability to third parties: (1) the approach of a substantial number of jurisdictions, taken from *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), which denies recovery to third parties "in the absence of a third party relationship to the auditor that is 'akin to privity'"; (2) the majority approach, based on the Restatement (Second) of Torts § 552, which "generally imposes liability on suppliers of commercial information to third persons who are intended beneficiaries of the information"; and (3) the minority approach, which allows "recovery based on auditor negligence to third parties whose reliance on the audit report was 'foreseeable.'" *Bily*, 11 Cal.Rptr.2d 51, 834 P.2d at 752 (citations omitted). In *Credit Alliance Corp.*, the Court of Appeals of New York required "the existence of a relationship between the parties sufficiently approaching privity" in order for liability to extend to third parties. 493 N.Y.S.2d 435, 483 N.E.2d at 119.

{19} In this case, we do not need to determine which of the approaches outlined in *Bily* New Mexico might adopt because Vigil can satisfy none of them, although we note that the Restatement approach appears closest to our Supreme Court's position in *Leyba*, which focuses on the intent to benefit the plaintiff rather than either foreseeability or strict privity. 120 N.M. at 775, 907 P.2d

at 179. First, with respect to the *Ultramares* test described in *Bily*, Vigil argues that he was in privity with the OSA and Martinez. We are not persuaded that he was. As this Court summarized in *Tarin's, Inc. v. Tinley*, 2000–NMCA–048, ¶ 12, 129 N.M. 185, 3 P.3d 680, privity of contract is the connection or legal relationship between contracting parties. Here, there is no such legal relationship.

{20} This brings us to the second, majority view noted in *Bily*, which imposes liability on those who supply commercial information to third persons who are intended beneficiaries. 11 Cal.Rptr.2d 51, 834 P.2d at 752. But a party claiming third-party-beneficiary status has the burden of showing that "the parties to the contract intended to benefit him." *Tarin's, Inc.*, 2000–NMCA–048, ¶ 13, 129 N.M. 185, 3 P.3d 680. Vigil asserts that as the target of a government audit, he was the intended beneficiary of the audit, but he provides no authority for such an assertion, and we are not persuaded that he, as an individual, was an intended beneficiary of the audit.

{21} Third, we are not persuaded that Vigil satisfies the minority view because he cannot demonstrate that he relied on the audit and that his reliance was foreseeable under a theory of direct negligence. Vigil cites *Jorgensen v. Massachusetts Port Authority*, 905 F.2d 515 (1st Cir.1990), *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 462 N.Y.S.2d 421, 448 N.E.2d 1332 (1983), *Oksenholt v. Lederle Laboratories*, 294 Or. 213, 656 P.2d 293 (1982), and *Quinones v. United States*, 492 F.2d 1269 (3rd Cir.1974), to support his argument that he should be entitled to bring a negligence claim for damage to his reputation. These cases are not relevant to the facts of the case before us. In all four cases, the recovery of damages for loss of reputation was premised on a duty established by the relationship between the defendant and the plaintiff.

{22} In *Oksenholt*, the Supreme Court of Oregon recognized a physician's right to bring a claim for negligence when he suffered damages to his reputation by relying on a drug manufacturer's representations

70

about a drug. 656 P.2d at 298. Analyzing the case under a theory of negligence per se, the court permitted recovery because it determined that the drug manufacturer violated a safety regulation and that physicians were in the class protected by the regulation. *Id.* at 297–98. In *Kennedy*, the plaintiff, a dentist, was permitted to recover damages for loss of reputation under a negligence theory when the repairer of an anesthetic machine reversed the labels for administration of oxygen and nitrous oxide, which resulted in the death of a patient. 462 N.Y.S.2d 421, 448 N.E.2d at 1333–34. In that case, as the Court of Appeals of New York observed, the repairer of the machine owed a duty to the dentist. *Id.* at 1334. In *Quinones*, the Third Circuit determined that Pennsylvania would recognize a duty of an employer to use due care in maintaining an employee's work history, thus permitting a cause of action in negligence. 492 F.2d at 1273. And in *Jorgensen*, which was a suit by airline pilots against the port authority for its alleged negligence in contributing to an aircraft accident, the First Circuit considered whether "Massachusetts would recognize the validity of a reputation-damage claim in a general negligence setting." 905 F.2d at 520. The court noted, however, that in order to recover such damages, all the elements of a claim for negligence would have to be established and that the existence of a duty in that case was not at issue. *Id.* at 522.

{23} In the case before us, however, the existence of a duty has not been established and Vigil cannot demonstrate a relationship between himself and Kennedy that is similar to the relationships in *Oksenholt, Kennedy, Quinones,* and *Jorgensen.* And, absent a duty, no damages, including damages to reputation, can be recovered under a negligence claim. *See Herrera v. Quality Pontiac*, 2003–NMSC–018, ¶ 6, 134 N.M. 43, 73 P.3d 181 ("[A] negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages."). Furthermore, the present case is unlike *Oksenholt* because, although Vigil alleged in his claims against the OSA and Martinez that

various statutes and regulations were violated, he neither alleged nor argued below that Kennedy was liable under a theory of negligence per se. *See* 656 P.2d at 297–98. Instead, Vigil argues that because he was a foreseeable victim of Kennedy's alleged negligent audit, Kennedy owed him a duty. Under the facts alleged by Vigil, we are not persuaded that Vigil has demonstrated that he relied on the accuracy of the audit. He did not allege in his complaint or argue on appeal what action he took in justifiable reliance on the report that resulted in any damages.

{24} Unpersuaded that Kennedy owed a duty to Vigil under any of the approaches outlined in *Bily*, and guided by the rationales of *Garcia* and *Leyba*, we affirm the district court's dismissal of Vigil's claims against Kennedy and his accounting firm.

## CONCLUSION

{25} For the foregoing reasons, we affirm the dismissal of this case against all Defendants.

{26} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and RODERICK T. KENNEDY, Judges.