2007-NMCA-038

155 P.3d 786

**Facundo VALDEZ, as Personal Representative, under the New Mexico Wrongful Death Act of Rumaldo Alvarado, Sr., Plaintiff–Appellant,**

v.

**YATES PETROLEUM CORPORATION, Defendant–Appellee.**

No. 25,305.

Court of Appeals of New Mexico.

March 22, 2007.

Hanratty Law Firm, Kevin J. Hanratty Artesia, NM, for Appellant.

Miller Stratvert P.A., Robin A. Goble, Rudolph A. Lucero, Albuquerque, NM, for Appellee.

## OPINION

ROBINSON, Judge.

{1} This matter came on for hearing on Plaintiff–Appellant's Motion for Rehearing. The Motion for Rehearing is **DENIED.** The Opinion filed on February 15, 2007 is withdrawn and the following substituted.

{2} Facundo Valdez (Plaintiff), as Personal Representative of Rumaldo Alvarado, Sr. (Decedent), brought this action for compensatory and punitive damages against Yates Petroleum Corporation (Defendant) based on an automobile accident involving Decedent and Jim's Water Service (JWS). Defendant had retained JWS, an independent contractor, to haul fresh water to Defendant's Mule Deer drilling site. After completing his last water delivery to Defendant, Jeremy Tice (Tice), a JWS employee, was involved in the accident that resulted in the death of Decedent on April 22, 2000. The district court granted summary judgment in favor of De-

fendant. Plaintiff argues that summary judgment should not have been granted because there were genuine issues of material fact. Plaintiff relies on several theories to establish liability against Defendant. Plaintiff argues that the work undertaken by JWS was inherently dangerous. Plaintiff further argues that Defendant, as contractor, should be liable for negligence in selecting an unsafe or incompetent sub-contractor. Plaintiff also argues that he is entitled to recover under the theory that Defendant and the sub-contractor entered into a contract and Defendant breached its duty of good faith and fair dealing.

{3} We affirm summary judgment, and hold that the work of Tice driving a water truck was not inherently dangerous and that Defendant is not liable for its selection of JWS as an independent contractor. Plaintiff has cited no authority supporting his contract theory, so we do not consider it.

## I. BACKGROUND

{4} Decedent was killed when the eighteen-wheeled truck driven by Tice, an employee of JWS, rear-ended the vehicle Decedent was driving. Tice stated that the accident occurred when he took his eyes off the road in order to retrieve a pack of cigarettes that had fallen on the floor, and then ran into Decedent. The state police report lists the cause as "Driver Inattention" and the violation is listed as "CARELESS DRIVING." Tice suggested that faulty brakes may have been to blame, but Tice made no mention of any problem with the brakes at the accident scene, or that he even tried to apply them before the accident. Tice had marijuana and amphetamines in his system at the time of the collision.

{5} Plaintiff has settled with JWS and Tice.

## II. DISCUSSION

### A. Standard of Review

{6} Plaintiff argues that summary judgment should not have been granted because there were genuine issues of material fact. Summary judgment is proper when "there

are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We review this issue de novo. *Id.*

### B. Inherently Dangerous Activity

▪ {7} "As a general rule, an employer of an independent contractor is not responsible for the negligence of the [independent] contractor or his employees." *Saiz v. Belen Sch. Dist.,* 113 N.M. 387, 393, 827 P.2d 102, 108 (1992). The exceptions are "where the employer has nondelegable duties (1) arising out of some relation toward the public or the particular plaintiff (*e.g.,* duty of lessor to lessee), or (2) because of work that is specially, peculiarly, or inherently dangerous." *Id.* The rationale underlying the rule that an employer is liable for the acts of an independent contractor when the work is inherently dangerous is the idea that an employer should not be allowed to insulate himself from liability by hiring an independent contractor when the employer knows or should know that the work presents special risks of physical harm. *Id.* at 395, 827 P.2d at 110. Whether an activity is inherently dangerous is a question of law. *Id.* at 395–96, 827 P.2d at 110–11.

▪ {8} We use a three-prong test to determine whether an activity is inherently dangerous:

1) the activity must involve an unusual or peculiar risk of harm that is not a normal routine matter of customary human activity; 2) the activity is likely to cause a high probability of harm in the absence of reasonable precautions; and 3) the danger or probability of harm must flow from the activity itself when carried out in its ordinary, expected way, such that reasonable precautions aimed at lessening the risk can be expected to have an effect.

*Gabaldon v. Erisa Mortgage Co.,* 1999–NMSC–039, ¶ 13, 128 N.M. 84, 990 P.2d 197. The first prong "addresses the relative rarity of the activity and the [public's] . . . experience with the activity." *Id.* ¶ 14 (internal quotation marks and citation omitted). The second prong addresses "the expected proba-

bility of harm associated with the activity." *Id.* ¶ 17. The third prong asks whether "the risk of harm flow[s] from the activity itself when carried out in an ordinary expected manner or [whether] the harm result[s] from the negligence of a particular actor[.]" *Id.* ¶ 19.

{9} New Mexico courts have found the installation of high-voltage lighting systems and the felling of large trees to be inherently dangerous. *See Saiz,* 113 N.M. at 398–99, 827 P.2d at 113–14 (holding that the installation of a high-voltage lighting system is inherently dangerous); *Enriquez v. Cochran,* 1998–NMCA–157, ¶ 98, 126 N.M. 196, 967 P.2d 1136 (holding that felling large trees is inherently dangerous). On the other hand, we have refused to find that the operation of a wave pool, or a swimming pool, is inherently dangerous. *Gabaldon,* 1999–NMSC–039, ¶ 21, 128 N.M. 84, 990 P.2d 197 (holding that the operation of a wave pool is not inherently dangerous); *Seal v. Carlsbad Indep. Sch. Dist.,* 116 N.M. 101, 103–04, 860 P.2d 743, 745–46 (1993) (holding that operation of a swimming pool is not inherently dangerous).

■ {10} Given these standards, we hold that the operation of an eighteen-wheeled truck to deliver water is not an inherently dangerous activity. Large numbers of eighteen-wheeled trucks are operated on our roadways, and the public is familiar with the activity. We do not believe the expected probability of harm associated with the activity is any greater than that applicable to the operation of motor vehicles generally, and Plaintiff introduced no evidence below to suggest that eighteen-wheeled trucks are involved in an abnormally high percentage of accidents.

{11} We conclude that the act of driving large trucks on the highway is neither unusual, nor does it pose a peculiar risk. As we noted in *Enriquez,* "while driving an automobile may be considered by some as highly dangerous, it is a common, every-day occurrence, and the resultant familiarity ... with its dangers through personal experience dictates against any finding that its risks are peculiar." 1998–NMCA–157, ¶ 93, 126 N.M. 196, 967 P.2d 1136. We are also persuaded that the risk of harm results from the negligence of a particular actor and not from the activity itself when carried out in an ordinary manner. *Id.* ¶ 97. As the Court in *Seal* noted, "[t]he doctrine of inherently dangerous activity pertains to creation or maintenance of a condition that is *universally* dangerous." 116 N.M. at 104, 860 P.2d at 746. The operation of large trucks on the highway is not universally dangerous.

{12} In reaching our conclusion, we recognize that, if an accident involving the negligent operation of an eighteen-wheeled truck does occur, the damage and harm is likely to be much greater. However, the analysis in this case does not depend on the resultant damage. Rather, it focuses on the danger presented by the activity. We are not persuaded that the operation of large trucks is unusual, statistically increases the likelihood of an accident, or presents risks with which the public is unfamiliar. The problem is the negligence and inattention of the driver and not any peculiar risk from the operation of eighteen-wheeled trucks.

{13} Plaintiff argues that "driving trucks weighing over 10,000 pounds on [New Mexico] highways without any safety program or drug and alcohol program constitutes an inherently dangerous activity." He also frames the issue, arguing that a company with twenty-five trucks that allows drivers to drive with methamphetamine and marijuana and has no drug and alcohol safety program is engaged in inherently dangerous activity. We do not agree that Plaintiff has posited the correct analysis. Under his analysis, the particular act or acts of alleged negligence are layered on top of the activity to determine whether the activity is inherently dangerous. Plaintiff's analysis would expand the definition of "inherently dangerous" well beyond what is delineated by our cases.

■ {14} The proper analysis depends on the nature of the activity in general and whether it is *inherently* dangerous, not on whether it was dangerous because of alleged negligent acts or omissions in the way it was conducted. *Gabaldon,* 1999–NMSC–039, ¶ 20, 128 N.M. 84, 990 P.2d 197 (holding that the risk of injury in wave pools "does not appear to have resulted from an inherent

danger in the ordinary, expected operation of wave pools"). *Gabaldon* rejected the idea that acts or omissions of those operating the pool, such as poor training of lifeguards, the lack of a safety auditing program, or improper functioning of the pool itself, triggered the employer's liability. *Id.* Similarly, we reject Plaintiff's argument that JWS's lack of drug or alcohol safety programs made driving an eighteen-wheeled truck inherently dangerous.

{15} Further, our holding is driven by policy. *See id.* ¶ 17 (recognizing that defining a particular activity as inherently dangerous involves consideration of public policy). We decline to conclude that an employer will be liable whenever an independent contractor is involved in a truck accident while making a delivery, or returning from a delivery. Plaintiff's suggestion that we should hold employers liable for such accidents seems to us to be an unwarranted extension of the "inherently dangerous activity" exception. We conclude that any risks created by driving a large truck, commonly seen on the highways, is "not sufficiently great to require, as a matter of public policy, application of a legal rule more stringent than ordinary negligence." *Id.* ¶ 17 (internal quotation marks and citation omitted). We hold that driving an eighteen-wheeled truck is not inherently dangerous. Therefore, summary judgment on this issue was proper.

## C. Negligent Selection of Contractor

■ {16} Plaintiff argues that Defendant can be held liable for negligently selecting an unsafe contractor. Plaintiff relies on evidence suggesting that JWS did not adequately test employees for drugs, and on affidavits from two expert witnesses asserting violations of federal Department of Transportation regulations. Plaintiff also relies on an affidavit from an industry expert, suggesting that Defendant failed to comply with recommendations of the American Petroleum Institute contractor safety guidelines.

{17} The employer of an independent contractor is generally not liable for physical harm caused to another by a negligent act, or omission of the contractor or his servants. *Saiz*, 113 N.M. at 393, 827 P.2d at 108; *see*

*also* RESTATEMENT (SECOND) OF TORTS § 409 (1965).

{18} However, when dealing with selection of an independent contractor, RESTATEMENT (SECOND) OF TORTS sets out the following exception to this general rule:

§ 411. Negligence in Selection of Contractor

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons.

{19} While several New Mexico cases have mentioned Section 411, none has expressly adopted it. *See Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 734 P.2d 1258 (1987); *Talbott v. Roswell Hosp. Corp.*, 2005–NMCA–109, 138 N.M. 189, 118 P.3d 194; *Williams v. Cent. Consol. Sch. Dist.*, 1998–NMCA–006, 124 N.M. 488, 952 P.2d 978. In *Talbott*, for example, we specifically noted that the defendant did not attack the viability of the plaintiff's claim based on Section 411. Instead, the defendant confined its challenge to the applicability of Section 411 in light of the particular facts and circumstances. We limited our analysis accordingly. 2005–NMCA–109, ¶ 7, 138 N.M. 189, 118 P.3d 194. Similarly, in the present case, assuming without deciding that Section 411 is viable substantive law, the undisputed facts establish that JWS was not performing any duty owed by Defendant at the time of the accident. The undisputed material facts establish that the fatal accident, underlying Plaintiff's claims, occurred after Tice had completed his last water delivery of the day to the drilling site. Tice was traveling on a public highway on his way back to JWS when the accident occurred. Defendant had no authority to control Tice and exercised no authority over him, regarding the manner in which he traveled to and from the drilling site, or the details of his work in that regard. The agreement between Defendant and JWS was for the providing of fresh water to operations

at Defendant's drilling site. No one was injured during that process on any land owned by Defendant, or over which it exercised control.

{20} Plaintiff implies that Defendant owed a duty to the traveling public because Tice was chemically impaired and had a JWS employee do some work on the truck brakes at Defendant's drilling site. However, there is no evidence in the record that Defendant knew that Tice was chemically impaired and was having work done on the truck brakes, or that the brakes were not in perfect working order after the work had been completed.

{21} Plaintiff's other theory is tied to Section 411(a). The essence of Plaintiff's argument is that Defendant was negligent in not properly investigating and screening JWS as a potential contractor, even though its work would necessarily involve driving heavily laden trucks-an activity which "will involve a risk of physical harm unless it is skillfully and carefully done." *Id.* Plaintiff relies on two items in the record to create a question of fact. First, he relies on the affidavit of a petroleum industry safety engineer, who asserts that Defendant failed to use ordinary care in hiring JWS in that Defendant "failed to follow standard industry practice in their failure to properly pre-qualify contractor, [JWS] as a safe contractor." The engineer bases his opinion on Defendant's failure to follow "American Petroleum Institute [API] contractor safety guidelines APIRP 2220 and RP 2221." Our review of the API document reveals that it is not an industry standard by its own terms. Rather, it simply provides helpful suggestions for improving job site safety, including a list of inquires which "may" be included in pretrial information requests. These suggestions are reasonable for some formal bid processes, but they provide no guidance as to what would be required in the much more ad hoc or informal arrangement between Defendant and JWS. There certainly is no suggestion that they do or should apply across the board to every situation where an entity such as Defendant calls for relatively sporadic delivery services such as we have here. We conclude that the safety expert's affidavit does not create a question of fact concerning Defendant's pre-hiring inquiries of JWS's competence.

{22} Second, Plaintiff relies on a negative Safety Fitness Rating Report from the New Mexico Department of Transportation (DOT) dated May 18, 2000. The report details DOT's assessment of problems with JWS's safety program as of that date. The difficulty for Plaintiff is that this report was created after the accident which gives rise to this case. Plaintiff points to nothing in the record creating a question of fact as to whether Defendant had any reason to know or suspect these difficulties before the accident. In the parlance of our tort law prior to the accident, there is nothing in the record to indicate that Defendant knew or should have known that JWS was incompetent or potentially incompetent to perform the work it was hired to do.

### D. Contract Theory

{23} Plaintiff argues that he is entitled to recover against Defendant under the theory that Defendant and the contractor entered into a contract and that Defendant breached its duty of good faith and fair dealing. Therefore, there are genuine issues of material fact that preclude summary judgment. We reject this argument.

{24} Plaintiff has not cited us to any on-point authority for the novel proposition that any breach of the contractual duty of good faith running between Defendant and its contractor would give Plaintiff a right to recover from Defendant after a motor vehicle accident. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of the issue).

### III. CONCLUSION

{25} We affirm the grant of summary judgment in favor of Defendant.

{26} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.