2008-NMCA-114

192 P.3d 267

Kim TALBOTT and Bonnie M. Talbott as Personal Representatives of the Estate of Damon K. Talbott, Deceased, Plaintiffs–Appellees,

v.

ROSWELL HOSPITAL CORPORATION d/b/a Eastern New Mexico Medical Center, Defendant–Appellant.

No. 27,135.

Court of Appeals of New Mexico.

June 4, 2008.

Certiorari Granted, No. 31,185, Aug. 25, 2008.

Sanders, Bruin, Coll & Worley, P.A., Michael T. Worley, Clay H. Paulos, Ian D. McKelvy, Roswell, NM, Slack & Davis, L.L.P., Michael L. Slack, Austin, TX, Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Jocelyn Drennan, Albuquerque, NM, for Appellees.

Miller Stratvert, P.A., Stephen M. Williams, Thomas R. Mack, Lorenz & Goble, P.C., Alice Tomlinson Lorenz, Albuquerque, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant Roswell Hospital Corporation (the Hospital) appeals from a jury verdict in favor of Plaintiffs Kim and Bonnie Talbott. Plaintiffs are co-personal representatives of the estate of Damon Talbott (Decedent) in a wrongful death action. After the first jury trial in this case resulted in a verdict for Plaintiffs, this Court reversed and

remanded to the district court for a new trial. *See Talbott v. Roswell Hosp. Corp.*, 2005–NMCA–109, ¶ 43, 138 N.M. 189, 118 P.3d 194. After the second jury trial, a verdict for Plaintiffs was again entered, and the Hospital was found to be partially liable for Decedent's wrongful death because it negligently selected the helicopter air ambulance provider with which it contracted and its negligence resulted in the helicopter crash that killed Decedent. On appeal, the Hospital contends that the district court erred in (1) allowing Plaintiffs to try the case on a Restatement (Second) of Torts § 411 (1965) (Section 411) theory, (2) giving deficient jury instructions, and (3) denying its motion for a new trial. We conclude that the district court did not err and affirm.

## FACTUAL BACKGROUND

{2} In the summer of 2000, MedFlight Air Ambulance (MedFlight) approached Medical Air Transport, Inc. (MAT) with a proposal to form a joint business operation that would provide air ambulance services in southeastern New Mexico. Shortly thereafter, MedFlight and MAT succeeded in agreeing to terms to form the operation. For the purpose of deciding this case, we refer to the MedFlight/MAT operation as "the Business" and note that MedFlight withdrew from the operation in May 2001, leaving MAT to ultimately run the operation on its own.

{3} The Business contacted the Hospital in late 2000 and proposed a deal to establish its base of operations on the Hospital's helipad. The Business's proposal was potentially beneficial to the Hospital because (1) although the Hospital had a helipad, it did not regularly base a helicopter at its facility to transport patients and (2) having a helicopter based on its premises would enable the Hospital to provide enhanced services to its patients, allow the Hospital to provide care to a greater number of patients, and create additional revenue for the Hospital.

{4} Following the Business's proposal, negotiations with the Hospital began. The Hospital's chief executive officer, Ronald Schaffer, gave the Hospital's chief operating officer, Brian Bickel, the task of handling the negotiations. During the course of the negotiations, Bickel contacted the chief executive officer of a hospital in Arizona, which had used the Business's air ambulance services, to inquire about the Business's track record. Bickel did not make any further specific inquiries into the Business's safety history; rather, he relied on the Business's Federal Aviation Administration (FAA) and state licensure as sufficient to establish that the Business was a competent air ambulance operator. Ultimately, the Hospital and the Business reached an agreement under which the Business was permitted to establish its base of operations on the Hospital's helipad. The Hospital also agreed to give the Business the "first call" opportunity to respond to the need to transport patients by helicopter from the Hospital's helipad. Accordingly, the agreement went into effect in December 2000.

{5} On October 19, 2001, Decedent, who was a police officer employed by the New Mexico State Police, was participating in a training program offered by the Business to train local law enforcement officers regarding how to establish a landing zone and direct a helicopter to land at accident scenes and other remote locations. At the end of the training session, Decedent and two other law enforcement officers boarded the helicopter owned by the Business and piloted by Shawn Kling, an employee of the Business, for an orientation flight. The helicopter crashed during the flight, killing Decedent. As we stated in our first appellate opinion concerning this case, "there were two possible direct causes of the accident: (1) overly aggressive maneuvering of the helicopter or (2) failure of the hydraulic system." *Talbott*, 2005–NMCA–109, ¶ 4, 138 N.M. 189, 118 P.3d 194. Regardless, neither party contests in this appeal the conclusion that Kling's negligence directly caused both the crash and Decedent's death.

## PROCEDURAL BACKGROUND

{6} After the helicopter crash, Plaintiffs filed suit in district court. In their second amended complaint, Plaintiffs included a claim, invoking Section 411, that the Hospital was negligent because it "failed to exercise reasonable care to employ a competent and careful contractor" to provide air ambulance services and "failed to properly investigate or

inquire about the fitness of" the Business as an air ambulance operator. The case proceeded to trial on Plaintiffs' Section 411 theory, and the jury returned a verdict for Plaintiffs. The Hospital appealed, and this Court reversed. *Talbott*, 2005–NMCA–109, ¶ 1, 138 N.M. 189, 118 P.3d 194.

{7} On its first appeal to this Court, the Hospital did not question the viability of Section 411 as a basis for recovery; rather, it challenged the application of Section 411 to the specific circumstances of the case. *Talbott*, 2005–NMCA–109, ¶ 7, 138 N.M. 189, 118 P.3d 194. In doing so, the Hospital argued that Section 411 did not apply because the evidence presented at trial did not support the district court's directed verdict concluding that an employer-independent contractor relationship with the Business existed. *Talbott*, 2005–NMCA–109, ¶ 8, 138 N.M. 189, 118 P.3d 194. We concluded that the district court erred in directing a verdict regarding that issue because the evidence presented at trial "was capable of supporting conflicting inferences on the existence of a contractual relationship"; therefore, "[t]he district court should have permitted the jury to resolve [the] issue." *Id.* ¶ 22. Accordingly, the case was reversed and remanded for a new trial. *Id.* ¶ 43.

{8} At the second trial, the existence of a contractual relationship between the Hospital and the Business was framed for the jury's determination. Once again, the jury returned a verdict for Plaintiffs based on the Hospital's liability pursuant to Section 411. The Hospital now appeals a second time.

## RESTATEMENT (SECOND) OF TORTS SECTION 411

{9} In this appeal, the Hospital contends that because New Mexico has not expressly adopted Section 411, the district court erred in allowing Plaintiffs to try the case on such a theory. Specifically, the Hospital argues that Plaintiffs should not have been permitted to proceed on their Section 411 claim because New Mexico law does not require an employer to exercise reasonable care in selecting and retaining an independent contractor to conduct potentially dangerous activities. We apply a de novo review to this question of law. *See Chavez v. Desert Eagle*

*Distrib. Co. of N.M.*, 2007–NMCA–018, ¶ 7, 141 N.M. 116, 151 P.3d 77, *cert. denied*, 2007–NMCERT–001, 141 N.M. 164, 152 P.3d 151.

■ {10} Typically, the employer of an independent contractor is not liable for physical harm caused to a third person by a negligent act or omission of the independent contractor. *Valdez v. Yates Petroleum Corp.*, 2007–NMCA–038, ¶ 17, 141 N.M. 381, 155 P.3d 786, *cert. denied*, 2007–NMCERT–006, 142 N.M. 16, 162 P.3d 171. However, Section 411 provides an exception to that general rule as follows:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
> (b) to perform any duty which the employer owes to third persons.

Restatement, *supra*, § 411, at 376. Section 411 defines a "competent and careful contractor" as one "who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others" and one "who also possesses the personal characteristics which are equally necessary." *Id.* § 411 cmt. a, at 377.

{11} A number of jurisdictions across the country have expressly adopted Section 411 as a valid cause of action. *See, e.g., W. Stock Ctr., Inc. v. Sevit, Inc.*, 195 Colo. 372, 578 P.2d 1045, 1048–49 (1978) (en banc); *McDonnell v. Music Stand, Inc.*, 20 Kan.App.2d 287, 886 P.2d 895, 900 (1994); *Dexter v. Town of Norway*, 1998 ME 195, ¶ 10, 715 A.2d 169, 172; *Lee v. Pulitzer Publ'g Co.*, 81 S.W.3d 625, 634–35 (Mo.Ct.App.2002); *Puckrein v. ATI Transp., Inc.*, 186 N.J. 563, 897 A.2d 1034, 1041–42 (2006); *Sipple v. Starr*, 205 W.Va. 717, 520 S.E.2d 884, 890–91 (1999). Recently, in *Dye v. WMC, Inc.*, 38 Kan. App.2d 655, 172 P.3d 49, 51 (2007), the Kansas Court of Appeals considered a Section 411 claim in a case that was factually similar to this case. In *Dye*, the co-personal repre-

sentatives of a man killed in an air ambulance crash brought a claim, based on Section 411, against a medical center for negligently hiring the air ambulance contractor that was involved in the crash. *Id.* at 51, 55. Although *Dye* was presented to the Kansas Court of Appeals in a different procedural posture from this case, the *Dye* court noted, similar to the district court's conclusion in this case, that if the decedent was not an employee of either the medical center or the contractor, it would be possible for him "to recover as [a] third person[ ] under Restatement § 411." *Id.* at 57.

{12} Although New Mexico is not among the jurisdictions that have expressly adopted Section 411, several New Mexico cases have discussed it in passing. *Valdez,* 2007–NMCA–038, ¶ 19, 141 N.M. 381, 155 P.3d 786. Those cases did not present the opportunity for the reviewing court to expressly adopt it. *See, e.g., id.* (assuming, without deciding, that "Section 411 is viable substantive law"); *Talbott,* 2005–NMCA–109, ¶ 7, 138 N.M. 189, 118 P.3d 194 (noting that because it was not attacked, it was improper for this Court to reach a decision regarding the viability of the Section 411 claim); *Gabaldon v. Erisa Mortgage Co.,* 1997–NMCA–120, ¶¶ 42–43, 124 N.M. 296, 949 P.2d 1193 (discussing Section 411 but deciding the case on other grounds), *rev'd in part on other grounds,* 1999–NMSC–039, ¶ 39, 128 N.M. 84, 990 P.2d 197. However, this case squarely presents us with the issue of whether a plaintiff is permitted to bring a claim for another's negligent selection of an independent contractor. We answer in the affirmative and take this opportunity to expressly adopt Section 411 as part of New Mexico's tort law.

{13} In reaching our conclusion, we note that our adoption of Section 411 does not represent any substantial departure from our tort jurisprudence. Apart from going as far as assuming, without deciding, that a Section 411 claim is viable, *Valdez,* 2007–NMCA–038, ¶ 19, 141 N.M. 381, 155 P.3d 786, we have traditionally "been very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas." *Schmitz v. Smentowski,* 109 N.M. 386, 396,

785 P.2d 726, 736 (1990). Furthermore, as Plaintiffs' answer brief indicates, on at least one occasion, this Court has affirmed the validity of a claim based on the negligent selection of an independent contractor, thereby implicitly endorsing the policy on which Section 411 is based. *See Eckhardt v. Charter Hosp. of Albuquerque, Inc.,* 1998–NMCA–017, ¶¶ 41–44, 124 N.M. 549, 953 P.2d 722 (affirming a judgment where the plaintiff claimed that a hospital negligently selected a contract therapist without referencing Section 411). Accordingly, our adoption of Section 411 comports with both the national trend in tort jurisprudence as well as the natural progression of our own tort jurisprudence.

█ {14} Finally, as a result of our adoption of Section 411, we must address the Hospital's argument that because the Business was licensed and certified by the FAA, the Hospital should have been allowed to presume that the Business was appropriately competent to provide air ambulance services. The plain language of Section 411 indicates that the amount of care that must be exercised in selecting an independent contractor varies depending on the dangerousness of the work to be performed. Restatement, *supra,* § 411 cmt. c, at 379. Specifically,

> if the work is such as will be highly dangerous unless properly done and is of a sort which requires peculiar competence and skill for its successful accomplishment, one who employs a contractor to do such work may well be required to go to considerable pains to investigate the reputation of the contractor and, if the work is peculiarly dangerous unless carefully done, to go further and ascertain the contractor's actual competence.

*Id.* Thus, we do not interpret Section 411 to necessarily allow for an employer to avoid liability by blindly relying on an independent contractor's licensure to establish its competence. On the contrary, the question regarding the lengths to which the Hospital was required to go to investigate the Business's reputation, based on the skill required to provide air ambulance services and the dangerousness of such work, was a factual one that was correctly left to the jury's discre-

tion. *See Spencer v. Health Force, Inc.,* 2005–NMSC–002, ¶ 22, 137 N.M. 64, 107 P.3d 504.

## APPLICABILITY OF SECTION 411

{15} Because we decide that it was permissible for Plaintiffs to bring a claim for the Hospital's negligent selection of the Business pursuant to Section 411, our focus shifts to the Hospital's arguments regarding whether Plaintiffs were entitled to a jury verdict on their Section 411 claim. We consider each of the Hospital's arguments in turn.

{16} First, the Hospital argues that the district court erred in implicitly concluding that Decedent was a foreseeable plaintiff. The crux of the Hospital's argument is that because Decedent was not a foreseeable plaintiff, the Hospital did not owe him a duty. *See Chavez,* 2007–NMCA–018, ¶ 9, 141 N.M. 116, 151 P.3d 77 (explaining that foreseeability is an important component in determining whether one owes a duty to another). Whether a particular defendant owed a particular plaintiff a duty is a matter of law that we review de novo, *see Calkins v. Cox Estates,* 110 N.M. 59, 62, 792 P.2d 36, 39 (1990), and if a plaintiff is able to show that the course of events was what one might have "objectively and reasonably expect[ed] to occur," we will conclude that the plaintiff was foreseeable. *Chavez,* 2007–NMCA–018, ¶ 17, 141 N.M. 116, 151 P.3d 77 (internal quotation marks and citation omitted).

{17} In this case, the Business was allowed to use the Hospital's helipad as its base of operations for its air ambulance enterprise. Under Section 411, the potential harm that the Hospital was required to consider before partnering with the Business was an accident, presumably a helicopter crash, that might be caused by the incompetence or carelessness of the Business. Nevertheless, the Hospital partnered with the allegedly incompetent and careless Business, and Decedent died in a helicopter crash as a result of the Business's negligence while participating in a law enforcement training exercise that sought to teach officers how to assist in facilitating the transportation of injured patients to medical facilities, such as the Hospital's property. *See Talbott,* 2005–

NMCA–109, ¶ 4, 138 N.M. 189, 118 P.3d 194. We conclude that the helicopter crash that killed Decedent was precisely what could have objectively and reasonably been expected to occur as a result of partnering with a careless or incompetent air ambulance service provider. *See Pittard v. Four Seasons Motor Inn, Inc.,* 101 N.M. 723, 730–31, 688 P.2d 333, 340–41 (Ct.App.1984) ("Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence be foreseeable.").

{18} Second, with respect to another issue framed as a duty question, the Hospital asserts that the district court erred, as a matter of law, in allowing the jury to decide the question of whether the Hospital made the proper inquiries into the capability of the Business to provide careful and competent air ambulance services. As noted above, however, it is the jury's province to determine the extent of the background investigation required in a case based on Section 411. The jury was instructed pursuant to Section 411 and accordingly resolved the factual disputes regarding the Hospital's investigation of the Business's competence in Plaintiffs' favor. We will not disturb that decision on appeal. *See Gonzales v. Gen. Motors Corp.,* 89 N.M. 474, 477, 553 P.2d 1281, 1284 (Ct. App.1976) ("[W]here the evidence is inconsistent or contradictory, it is the function of the jury to resolve the conflict and not the function of this Court to resolve the conflict as a matter of law.").

{19} As a corollary to its second argument, the Hospital contends that any duty that could possibly exist in this case is preempted by federal law. In support of its position, the Hospital references three federal statutory provisions and one part of the Code of Federal Regulations regarding the minimum safety regulations promulgated by the FAA, *see* 49 U.S.C. §§ 41101, 44701, 44703, 44705 (2000); 14 C.F.R. §§ 135.1 to .507 (2007), and relies primarily on *Abdullah v. American Airlines, Inc.,* 181 F.3d 363, 364–65 (3d Cir. 1999), which concluded that the Federal Aviation Act impliedly preempts "the entire field of aviation safety." In *Abdullah,* several plaintiffs sued an airline company, alleging

that the pilot and flight crew on a commercial flight did not adequately warn them in time to prevent injuries that resulted from expected turbulence. *Abdullah*, 181 F.3d at 365. That case turned on whether either the territorial common law of the Virgin Islands or federal regulations were applicable in determining the appropriate standards of care for the pilot and flight crew. *Id.* at 366. In this case, however, the acts or omissions of Kling with respect to safety standards set forth in federal statutory and regulatory law are not in dispute; rather, the issue revolves around whether the Hospital made reasonable inquiries into the competence and carefulness of the Business as an air ambulance service provider pursuant to Section 411. Against the backdrop of our "strong presumption against preemption," *Montoya v. Mentor Corp.*, 1996–NMCA–067, ¶ 7, 122 N.M. 2, 919 P.2d 410, the Hospital's reliance on *Abdullah* is misplaced under the facts of this case.

■ {20} Third, the Hospital contends that the district court erred in denying its motion for judgment as a matter of law because Plaintiffs failed to introduce evidence that adequately supported proximate cause. In the first appeal in this case, we clearly stated that if the jury took a "broad view" of the evidence presented in the first trial, it "could have found that the qualities of [the Business] that the Hospital negligently failed to discover, disregard for pilot qualifications and safety, [proximately] caused the crash." *Talbott*, 2005–NMCA–109, ¶ 39, 138 N.M. 189, 118 P.3d 194. In this appeal, it is uncontested that Plaintiffs offered similar evidence at the second jury trial. Because it is the jury's province to weigh conflicting evidence regarding proximate cause, *id.* ¶ 40, we see no reason to disturb the district court's denial of the Hospital's motion. *See id.* ¶ 33 ("When reviewing the denial of a directed verdict, we must view the evidence in the light most favorable to the prevailing party.").

■ {21} Fourth, the Hospital contends that the district court erred when it failed to determine, as a matter of law, that the Hospital did not enter into a contract to employ the Business. We have expressly stated that when "the existence of a contract is at issue

and the evidence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist." *Eckhardt*, 1998–NMCA–017, ¶ 39, 124 N.M. 549, 953 P.2d 722 (internal quotation marks and citation omitted). Again, in the first appeal in this case, we plainly concluded that at the first trial, "the evidence was capable of supporting conflicting inferences on the existence of a contractual relationship between [the Business] and the Hospital." *Talbott*, 2005–NMCA–109, ¶ 22, 138 N.M. 189, 118 P.3d 194. In this appeal, the Hospital argues that the testimony of three of its witnesses regarding the Hospital's relationship with the Business, apparently not offered at the first trial, was sufficient to prove that there was, in fact, no contractual relationship that could sustain a Section 411 claim. That new testimony included (1) the opinion of the Hospital's chief resource officer that the Hospital's relationship with the Business did not "help the Hospital's profitability"; (2) the statements of the Hospital's ex-director of marketing that the Hospital did not actively advertise its newly available air ambulance service; and (3) the opinion of the Hospital's expert witness that the Hospital's patients, not the Hospital itself, benefitted from the Business's presence. Plaintiffs, on the other hand, offered evidence at the second trial regarding the active negotiations between the Hospital and the Business and the ultimate deal that allowed the Business to establish its base of operations on the Hospital's helipad in exchange for the right to "first call" if a patient needed air ambulance services. Accordingly, at the second trial, similar to the first trial, there was conflicting evidence regarding whether a contract existed, and the district court judge appropriately deferred to the jury to resolve the issue. *See Eckhardt*, 1998–NMCA–017, ¶ 39, 124 N.M. 549, 953 P.2d 722.

{22} Fifth, the Hospital argues that the district court should have granted its motion for judgment as a matter of law because Plaintiffs failed to introduce evidence that an appropriate background check would have revealed the Business's incompetence. However, the Hospital expressly concedes that

Plaintiffs presented evidence that the Business "had internal problems and leadership issues" shortly before the crash that took Decedent's life occurred. Additionally, Plaintiffs' expert testified at trial that it would have been very easy for the Hospital to uncover all of the problems that the Business had experienced if it had consulted with someone with aviation expertise prior to making a deal with the Business. Therefore, the district court properly denied the Hospital's motion for judgment as a matter of law on this issue and allowed the jury to decide whether to lend credence to the Hospital's argument. *See Weidler v. Big J Enters., Inc.*, 1998–NMCA–021, ¶ 30, 124 N.M. 591, 953 P.2d 1089 (stating that it is the jury's responsibility to resolve conflicts in the evidence and to ultimately determine where the truth rests).

{23} We conclude that none of the Hospital's arguments regarding the applicability of Section 411 to this case requires a reversal of the verdict of the second trial jury. We therefore turn to the Hospital's final two arguments raised in this appeal.

**JURY INSTRUCTIONS**

{24} Having decided that it was permissible for Plaintiffs to bring a Section 411 claim and that the claim was properly left for the jury to decide, we now address the Hospital's argument challenging various aspects of the jury instructions given at the second trial. The Hospital contends that the jury instructions concerning the elements of Plaintiffs' Section 411 claim were confusing and failed to describe all of the elements necessary to result in a verdict for Plaintiffs. Specifically, the Hospital argues that the jury should have been instructed that (1) Plaintiffs had the burden of proving that the Business was acting as the Hospital's independent contractor (i.e., within the "scope of work" for the Hospital) at the time of Decedent's death; (2) if there was no "presumption of competence," Plaintiffs were required to prove that "the circumstances of this case triggered a greater duty of inquiry before such a duty could be imposed"; (3) Plaintiffs had the burden of proving a direct causal connection between the Business's incompetence and the crash that killed Decedent; and (4) one party

could not be the independent contractor of another unless there was "a contract between them by which the one actually employ[ed] the other."

{25} This Court reviews jury instructions de novo in order "to determine whether they correctly state the law and are supported by the evidence introduced at trial." *Benavidez v. City of Gallup*, 2007–NMSC–026, ¶ 19, 141 N.M. 808, 161 P.3d 853 (internal quotation marks and citation omitted). Although "[a] party is entitled to instructions on all of his or her correct legal theories of the case if there is evidence in the record to support the theories," *id.*, jury instructions will be upheld "if, as a whole, they fairly represent the law applicable to the issue in question." *Kennedy v. Dexter Consol. Sch.*, 2000–NMSC–025, ¶ 28, 129 N.M. 436, 10 P.3d 115.

{26} It appears that the district court chose not to specifically incorporate the Hospital's requested instructions regarding (1) whether Decedent was killed "during the course and scope of" the Business's employment with the Hospital; (2) Plaintiffs' burden of proving that the Hospital had actual knowledge of Business's incompetence; and (3) Plaintiffs' burden of proving a "direct causal connection" between the Business's "alleged incompetence at the time of 'hiring' and the negligence which, many months later, caused the accident." We note, however, that the district court's instructions regarding Plaintiffs' Section 411 claim were specifically patterned after the language in the Restatement and that none of the essential elements of a Section 411 claim was omitted. As a result, because the jury was presented with a fair representation of the law concerning a Section 411 claim, which we have expressly adopted in this opinion, the district court did not err in omitting the instructions that the Hospital requested.

{27} Similarly, the Hospital argues that the instructions given to the jury were misleading regarding the necessary relationship required to prove that the Business was an independent contractor of the Hospital. However, our review of the record indicates that each of the elements required to form a contract was included in the jury instructions

along with a definition of the term "independent contractor" and a brief description of the relationship required to establish that one is the independent contractor employed by another. Therefore, the jury was adequately instructed on the independent contractor issue.

## MOTION FOR A NEW TRIAL

{28} Finally, the Hospital contends that the district court erred when it denied its motion for a new trial. The Hospital argues that a new trial should have been granted as a result of the alleged inadequacy of the jury instructions and the alleged misconduct of Plaintiffs' counsel throughout the second trial. Because we have concluded that the jury instructions in this case were adequate, we only address the Hospital's concerns regarding the alleged misconduct of Plaintiffs' trial counsel.

{29} The rule in New Mexico has long been that "we will not disturb a trial court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Garcia*, 2005–NMSC–038, ¶ 7, 138 N.M. 659, 125 P.3d 638. Unless the district court's decision to deny a motion for a new trial was "arbitrary, capricious, or beyond reason," we will not reverse it on appeal. *State v. Desnoyers*, 2002–NMSC–031, ¶ 26, 132 N.M. 756, 55 P.3d 968, *abrogation on other grounds recognized by State v. Forbes*, 2005–NMSC–027, ¶ 6, 138 N.M. 264, 119 P.3d 144.

{30} In support of its argument, the Hospital contends that Plaintiffs' counsel inappropriately commented on an objection by the Hospital's counsel, and the district court's subsequent ruling misstated the law in front of the jury, made inappropriate statements in closing argument that called into question the integrity of the Hospital's counsel and injected statements of personal belief, and quoted the Bible in closing argument. Although we do not necessarily condone the specific instances of the behavior of Plaintiffs' counsel cited by the Hospital, we see no compelling reason to second-guess the district court's decision to deny its motion for a new trial. The district court was given the opportunity to consider the extensive argument included in the Hospital's motion and

ultimately decided that a new trial was not warranted. *See State v. Smith*, 2001–NMSC–004, ¶ 32, 130 N.M. 117, 19 P.3d 254 ("We rely upon the judgment of the trial court because [t]he trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision.") (alteration in original) (internal quotation marks and citation omitted). Given our standard of review, we find no basis in concluding that the district court's denial of the Hospital's motion for a new trial was arbitrary, capricious, or beyond reason.

## CONCLUSION

{31} With this opinion, we expressly adopt Section 411 of the Restatement (Second) of Torts as the law of New Mexico. We further conclude that the evidence presented at the second trial in this case was sufficient to establish the elements of Plaintiffs' claim under Section 411, the jury was adequately instructed on the law, and the district court did not err in denying the Hospital's motion for a new trial. We therefore affirm.

{32} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and MICHAEL E. VIGIL, Judges.