# United States Court of Appeals

## For the First Circuit

No. 21-1257

THOMAS FORBES, as he is the Personal Representative of the
Estate of GEORGE J. FORBES,

Plaintiff, Appellant,

v.

BB&S ACQUISITION CORP.,

Defendant, Appellee,

B & C TIMBERS LLC; GREGORY TRUCKING COMPANY, INC.; WILEY LENUE
HOOKS; BSG LEASING, INC.; MAC COMPANY, INC.; GREGORY LEASING
COMPANY, INC.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Dino M. Tangredi for appellant.
John B. Stewart, with whom Thomas P. Schuler, Law Offices of
Steven B. Stein, and Murphy & Manitsas, LLC were on brief, for
appellee.

December 28, 2021

**LYNCH**, **Circuit Judge**.   After completing a lumber delivery for his employer Gregory Trucking Co., Inc. ("Gregory Trucking"), under contract with BB&S Acquisition Corp. ("BB&S"), Wiley Hooks allegedly caused a fatal accident killing George Forbes.  Thomas Forbes ("Forbes"), the personal representative of George Forbes's estate, sued in federal court alleging that BB&S's negligence in selecting Gregory Trucking as an independent contractor was the proximate cause of the accident.

Forbes appeals from entry of summary judgment in favor of BB&S.  The district court concluded that BB&S could not be liable under Massachusetts common law for the actions of an independent contractor that occurred after the completion of the job.  The court also concluded that BB&S was not the "statutory employer" of Hooks.  See 49 C.F.R. § 390.5.

We affirm.

**I.**

**A.**

On August 22, 2016, B & C Timbers LLC contracted with Gregory Trucking to transport lumber from North Carolina to BB&S in Rhode Island.  BB&S is a company that buys lumber in its raw form, treats it, and resells the pressure-treated lumber.  Hooks was the employee of Gregory Trucking who was assigned to the transportation job, and the tractor-trailer truck he drove was registered and leased to Gregory Trucking.

- 3 -

On August 23, after Hooks delivered the lumber to BB&S in Rhode Island, BB&S contracted with Gregory Trucking to transport a separate load of its treated lumber from its Rhode Island facility to L.P. Adams, a lumberyard in Dalton, Massachusetts. The load was transported pursuant to a bill of lading, which identified the quantity and weight of the lumber, and the destination of the delivery at L.P. Adams in Dalton.

On August 24, sometime before 7:00 a.m., Gregory Trucking, through its employee Hooks, delivered the lumber to L.P. Adams in Dalton. After Hooks completed Gregory Trucking's contractual obligation to BB&S, Gregory Trucking then directed him to fulfill another company's transportation contract. That contract for the different company (not BB&S) required Hooks to pick up lumber from Eagle Logistics in Monson, Massachusetts, and transport it to North Carolina. Forbes alleges that during this trip to pick up lumber from Eagle Logistics in Monson, Hooks ran a red light, hitting the pick-up truck driven by George Forbes. George Forbes died two days later from injuries sustained in the crash.

**B.**

On December 13, 2017, Forbes filed a federal lawsuit under diversity jurisdiction in the District of Massachusetts. He alleged under Massachusetts common law that BB&S had negligently selected Gregory Trucking as an independent contractor to

- 4 -

transport its lumber.  He also alleged that BB&S was liable as the true employer of Hooks because BB&S was the "statutory employer" under 49 C.F.R. § 390.5.[1]

On June 9, 2020, after briefing and oral argument, the district court entered summary judgment for BB&S.  It held that Massachusetts courts have not adopted Restatement (Second) of Torts § 411 and that it is not the role of a federal court sitting in diversity to expand state law.  The court independently held that BB&S's duty of care necessarily ended with the delivery of its lumber pursuant to its contract with Gregory Trucking.  The court also rejected Forbes's argument that BB&S was the "statutory employer" of Hooks.

On March 17, 2021, the court denied Forbes's motion for reconsideration.  In the motion for reconsideration, Forbes raised for the first time the argument that the court should certify to the Massachusetts Supreme Judicial Court ("SJC") the question of whether Massachusetts courts have adopted § 411.

Forbes timely appealed.

---

[1]    In the same complaint, Forbes also sued Gregory Trucking and Hooks.  Counsel for Forbes informed our court at oral argument that Forbes had tried those claims before a jury in September 2021.  The jury returned a verdict in favor of Forbes against Gregory Trucking and Hooks.

## II.

We review de novo a district court's grant of summary judgment.  See Foss v. Marvic Inc., 994 F.3d 57, 64-65 (1st Cir. 2021).

### A.

Forbes's case is predicated on several assumptions, the first of which is that Massachusetts courts will adopt Restatement (Second) of Torts § 411.  Section 411 provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
> (b) to perform any duty which the employer owes to third persons.

Forbes further assumes that Massachusetts courts would interpret § 411 to extend liability beyond the period of any contractual relationship.

Under the Erie doctrine, see Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), "we apply 'state substantive law' as that law has been applied by the state's highest court," Torres-Ronda v. Nationwide Mut. Ins. Co., 18 F.4th 80, 84 (1st Cir. 2021) (quoting Philibotte v. Nisource Corp. Servs. Co., 793 F.3d 159, 165 (1st Cir. 2015)).  Where a state's highest court has not spoken directly, federal courts are restrained.  See Aronstein v. Mass. Mut. Life Ins. Co., 15 F.4th 527, 534 (1st Cir. 2021).  "The

- 6 -

plaintiff, who made a deliberate choice to sue in federal court rather than in a [Massachusetts] state court, is not in a position to ask us to blaze a new trail that the [Massachusetts] courts have not invited." Jones v. Secord, 684 F.3d 1, 11 (1st Cir. 2012).

Forbes concedes that the SJC has never explicitly adopted § 411. As to § 411, he asks that we "anticipate how the state court would proceed." Packgen v. BP Expl. & Prod., Inc., 754 F.3d 61, 73 (1st Cir. 2014). We have no need to address or resolve that § 411 question. That is because his argument fails at the next step.

Forbes conceded at oral argument that he cites no case law, from Massachusetts or any other jurisdiction, to support the argument that BB&S could be held liable to Forbes for Hooks's conduct after he had completed the job for which BB&S had contracted Gregory Trucking to do. We see no basis in Massachusetts law to predict that the SJC would impose common law liability on BB&S based on these facts.

Massachusetts courts have held that under Massachusetts common law, a duty assumed under contract is limited to the obligations under that contract. See Anderson v. Fox Hill Vill. Homeowners Corp., 676 N.E.2d 821, 823-24 (Mass. 1997); Parent v. Stone & Webster Eng'g Corp., 556 N.E.2d 1009, 1012 (Mass. 1990). Here, BB&S's contractual relationship with Gregory Trucking ended

once Hooks delivered the lumber to L.P. Adams. The bill of lading included no additional obligations extending beyond the contracted-for delivery of lumber, and Hooks was free to proceed to his next job upon delivery.

Further, the SJC has rejected a finding of proximate cause in a case where a defendant no longer had control over the party that caused harm to a plaintiff.[2] See Kent v. Commonwealth, 771 N.E.2d 770, 777 (Mass. 2002) (holding that the Commonwealth's decision to parole inmate did not proximately cause third party's injuries because the parolee's actions occurred after the Commonwealth had transferred control of the parolee to the federal government).

State courts in other jurisdictions have rejected Forbes's argument. In Brettman v. M&G Truck Brokerage, Inc., the intermediate appellate court of Illinois, a jurisdiction which has adopted § 411, considered a similar factual scenario and expressly

---

[2]    In Massachusetts, the SJC has stated:

> As a practical matter, in deciding the foreseeability question, it seems not important whether one defines a duty as limited to guarding against reasonably foreseeable risks of harm or whether one defines the necessary causal connection between a breach of duty and some harm as one in which the harm was a reasonably foreseeable consequence of the breach of a duty.

Whittaker v. Saraceno, 635 N.E.2d 1185, 1187-88 (Mass. 1994).

rejected Forbes's argument on proximate cause grounds, even assuming arguendo that the defendants had breached a duty of care. 127 N.E.3d 880, 891-92 (Ill. App. Ct. 2019). In Brettman, a producer and broker hired an independent contractor carrier to transport a load of cucumbers; the tractor-trailer driver employed by the carrier was involved in an accident shortly after delivering the cucumbers. Id. at 883. The Illinois court held that any alleged breach of duty by the producer and broker did not proximately cause the plaintiff's injuries. Id. at 892-95. The court held that "it was the worker, not the work, who went on, posttermination, to injure a third party. Illinois does not have a policy of making those who select independent contractors become insurers for the independent, posttermination actions of those contractors." Id. at 895 (emphasis in original). For the same reasons, even assuming arguendo that BB&S breached a duty of care, this breach was not a proximate cause of the accident because the accident occurred after Gregory Trucking had completed the contracted-for work.

BB&S cites to Valdez v. Yates Petroleum Corp., 155 P.3d 786, 790 (N.M. Ct. App. 2007), and Forbes attempts to distinguish the case. In Valdez, the intermediate appellate court of New Mexico expressly rejected the argument that Forbes makes here, that the duty of care extends after the completion of a delivery contract. 155 P.3d at 790. In Valdez, the defendant employer

hired an independent contractor truck driver to deliver water to its work site; after the last delivery of the day, the truck driver was involved in a fatal accident. Id. at 788. The New Mexico court held that, even assuming arguendo that § 411 was viable substantive state law, the § 411(b) claim would fail because the truck driver "was not performing any duty owed by Defendant at the time of the accident. The undisputed material facts establish that the fatal accident, underlying Plaintiff's claims, occurred after [the truck driver] had completed his last water delivery of the day . . . ." Id. at 790. So too here. The accident occurred after Hooks had completed the delivery for BB&S and was driving to his next pickup for a different company.

## B.

Forbes separately argues that the district court erred in holding that BB&S was not the "statutory employer" of Hooks under the Federal Motor Carrier Safety Regulations ("FMCSR"). 49 C.F.R. § 390.5. Forbes argues that BB&S was a "motor carrier" as defined by the FMCSR and thus the "statutory employer" of Hooks and owed a duty to hire drivers that would operate vehicles in a safe manner.

Forbes's argument fails because it is contrary to the statutory definitions set forth in the FMCSR. The FMCSR provides the following definitions:

Employer means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it,

. . .

Motor carrier means a for-hire motor carrier or a private motor carrier. The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories.

. . .

Shipper means a person who tenders property to a motor carrier or driver of a commercial motor vehicle for transportation in interstate commerce, or who tenders hazardous materials to a motor carrier or driver of a commercial motor vehicle for transportation in interstate or intrastate commerce.

49 C.F.R. § 390.5.

The district court correctly held that BB&S was the "shipper," and Gregory Trucking was the "employer" and "motor carrier."[3] BB&S tendered lumber to Hooks for transportation and delivery. During the delivery, Hooks was acting as a Gregory Trucking employee. The truck used by Hooks was registered and leased to Gregory Trucking; BB&S did not lease any equipment or motor vehicles to Gregory Trucking or Hooks. BB&S did not have any control over the delivery route or manner of delivery. As

---

[3] Judge Barron would not address the issue of whether BB&S is a statutory employer and so does not join this portion of the opinion that concludes that BB&S is not.

such, under the FMCSR, BB&S was the "shipper" and owed no duty under the regulations. See Harris v. FedEx Nat'l LTL, Inc., 760 F.3d 780, 785 (8th Cir. 2014) ("[T]he FMCSR applies to motor carriers, not to shippers who engage independent contractors to transport goods.").

Even assuming dubitante that BB&S was the "statutory employer" of Hooks, Forbes does not offer any authority to support the argument that BB&S could be liable for conduct that, as here, occurred after it no longer had control over Hooks. Any potential employer-employee relationship between BB&S and Hooks terminated upon delivery of the lumber to L.P. Adams. Massachusetts courts have found that an employer cannot be liable for negligent hiring of an employee whose actions occurred outside the scope of employment. See Ledet v. Mills Van Lines, Inc., 150 N.E.3d 782, 787 (Mass. App. Ct. 2020) ("As a matter of law, [the employee]'s criminal acts, committed while [the employee] was off duty and not engaged in the work for which [the employer] employed him, against a person with whom [the employer] held no commercial or other relationship, was not a sufficiently foreseeable result of [the employer]'s hiring of [the employee], or its decision to allow him to drive a truck incident to the move to which he was assigned.").

**III.**

Affirmed.